STATE of Delaware

v.

**Paul E. DAVIS, Defendant.**

Superior Court of Delaware,
Sussex County.

Submitted: Nov. 21, 1984.

Decided: Jan. 24, 1985.

Kathleen Jennings, Deputy Atty. Gen.,
for State.

William M. Chasanov, of Brown, Shiels &
Chasanov, Georgetown, for defendant.

O'HARA, Judge.

This case presents the question, previously undecided in this State, whether the testimony of a witness who has undergone hypnosis to refresh her recollection is admissible in a criminal trial where the witness had no recollection of the events in question prior to hypnosis.

The defendant, Paul Edward Davis, was indicted for Assault in the First Degree, 11 *Del.C.* § 613, on June 11, 1984. The charge stems from an incident involving Bonnie Kay Hickman, the alleged victim and the proposed witness, on September 23, 1983, when Ms. Hickman ("the witness") was found lying unconscious by a roadside.

The witness initially had no recollection of the events of September 23, 1983.[1] In an effort to aid her recall, she agreed to undergo hypnosis. On March 28, 1984, the witness accompanied detectives from the Delaware State Police to the office of Dr. Cono Galliani. Dr. Galliani is a licensed psychologist, employed by the State, and a diplomate in forensic psychology. He has hypnotized numerous subjects for both therapeutic and investigative purposes, and previously has testified for both the prosecution and the defense in the courts of this State.

Prior to beginning the hypnotic session, Dr. Galliani spoke with the police detectives, who related the facts of the case to him. The psychologist also spoke with the witness. He explained the process of hypnosis to her, confirmed that she had no mental illness which would preclude hypnosis, and ascertained that she had no memory of the September 23 incident. Dr. Galliani then conducted the hypnotic session with one of the detectives present. The detective did not, however, ask the witness any questions.

The March 28 session was videotaped, and the tape was viewed by the Court at

1. Defendant maintained that the witness had    jumped from his moving vehicle.

the evidentiary hearing held in connection with this matter. Although the witness implicated the defendant while under hypnosis, she still could not recall the events of September 23 following the hypnotic session. Consequently, she submitted to hypnosis a second time, on April 10, 1984. That session also was videotaped and viewed by the Court.

Following the April 10 session, the witness recalled that the defendant had repeatedly struck her in the face on the evening of September 23, and in an effort to escape his blows, she had tried to exit the vehicle in which she and the defendant were traveling. The defendant argues that the witness' hypnotic memory is unreliable, and therefore, seeks to have her testimony suppressed, pursuant to Superior Court Criminal Rule 41(e).

In recent years, many courts have decided whether hypnotically-refreshed testimony should be admitted at criminal trials. The courts have reached various results. Some courts have ruled that the fact that a witness has undergone hypnosis to refresh his memory should be considered by the trier of fact in assessing the credibility of and the weight to be afforded the witness' testimony. See, e.g., *State v. Wren*, La. Supr., 425 So.2d 756 (1983); *State v. Brown*, N.D.Supr., 337 N.W.2d 138 (1983); *State v. Greer*, Mo.App., 609 S.W.2d 423 (1980), vacated on other grounds, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981). Other courts have fashioned elaborate safeguards which, when followed, generally render hypnotically-enhanced testimony admissible. See, e.g., *House v. State*, Miss. Supr., 445 So.2d 815 (1984); *State v. Armstrong*, 110 Wis.2d 555, 329 N.W.2d 386 (1983), cert. denied, 103 S.Ct. 2125 (1983); *State v. Hurd*, 86 N.J. 525, 432 A.2d 86 (1981). Still other courts have ruled that hypnotic memory is not admissible. See, e.g., *State v. Collins*, 296 Md. 670, 464 A.2d 1028 (1983); *People v. Hughes*, 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (1983); *Com. v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981).

While the courts have taken various approaches to the admissibility of hypnotically-enhanced testimony, all of the courts have addressed the problems associated with allowing a witness who has previously been hypnotized to testify against a defendant at a criminal trial. Relying primarily upon the research of Drs. Bernard L. Diamond and Martin T. Orne, the courts have been concerned with a hypnotized subject's receptivity to suggestion and tendency to confabulate, and a previously hypnotized witness' inclination to confound pre-hypnotic and post-hypnotic memory and to boast increased confidence in his recollection. See generally Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness*, 68 Calif.L.Rev. 313 (1980) (hereinafter "Diamond"); Orne, *The Use and Misuse of Hypnosis in Court*, 27 Int. J. Clinical & Experimental Hypnosis 311 (1979) (hereinafter "Orne").

By its very nature, hypnosis is suggestive. Defined as "[t]he act of inducing artificially a state of sleep or trance in a subject by means of verbal suggestion by the hypnotist or by the subject's concentration upon some object", hypnotism is generally characterized by extreme responsiveness to suggestions from the hypnotist. *Black's Law Dictionary* 668 (5th ed. 1979). It is this state of heightened suggestibility which, according to Dr. Orne, leads a hypnotized subject to confabulate. Orne, supra at 315. He maintains that:

> [t]he hypnotic suggestion to relieve a past event, particularly when accompanied by questions about specified details, puts pressure on the subject to provide information for which few, if any, actual memories are available. This situation may jog the subject's memory and produce some increased recall, but it will also cause him to fill in details that are plausible but consist of memories or fantasies from other times. *Id.*

Dr. Orne further states that "[i]t is extremely difficult to know which aspects of hypnotically aided recall are historically accurate and which aspects have been confa-

bulated." *Id.* Dr. Diamond concurs with these conclusions. Diamond, supra at 333, 335.

In *State v. Collins,* supra, the Maryland Court of Appeals determined that because the best expert cannot discern whether memory retrieved by hypnosis is truth, falsehood, or confabulation, hypnotically aided recall is not scientifically reliable. *Id.* at 1034, 1044. Relying upon *Frye v. United States,* D.C.Cir., 293 F. 1013 (1923),[2] adopted in Maryland in *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978), the Court in *Collins* held that hypnotically-enhanced testimony is not admissible. *Id.* at 1044. Similarly, in *Com. v. Nazarovitch,* supra, the Supreme Court of Pennsylvania ruled hypnotically-refreshed testimony inadmissible on the ground that there is "no truly objective scientific test for determining whether information related during a trance state is reliable." *Id.* at 177; see also *People v. Hughes,* supra 59 N.Y.2d 523, 466 N.Y.S.2d, 436 A.2d at 494.

In contrast to the courts in *Collins* and *Nazarovitch,* the Supreme Court of New Jersey, in *State v. Hurd,* supra, declined to adopt a rule of inadmissibility. Instead, the *Hurd* Court adopted safeguards designed to minimize suggestibility and confabulation. These safeguards include the requirements that:

> [f]irst, a psychiatrist or psychologist experienced in the use of hypnosis must conduct the session.... Furthermore, the expert will be able to conduct the interrogation in a manner most likely to yield accurate recall.
>
> Second, the professional conducting the hypnotic session should be independent of and not regularly employed by the prosecutor, investigator or defense [footnote omitted]. This condition will safeguard against any bias on the part of the hypnotist that might translate into leading questions, unintentional cues, or other suggestive conduct.
>
> Third, any information given to the hypnotist by law enforcement personnel or the defense prior to the hypnotic session must be recorded, either in writing or another suitable form. This requirement will help the court determine the extent of information the hypnotist could have communicated to the witness either directly or through suggestion.
>
> Fourth, *before* inducing hypnosis the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them. The hypnotist should carefully avoid influencing the description by asking structured questions or adding new details.
>
> Fifth, all contacts between the hypnotist and the subject must be recorded. This will establish a record of the pre-induction interview, the hypnotic session, and the post-hypnotic period, enabling a court to determine what information or suggestions the witness may have received during the session and what recall was first elicited through hypnosis....
>
> Sixth, only the hypnotist and the subject should be present during any phase of the hypnotic session, including the pre-hypnotic testing and the post-hypnotic interview.... [T]he mere presence of ... a person [familiar with the investigation] may influence the response of the subject. *Id.* at 96–7.

The party seeking to introduce hypnotically-refreshed testimony must show compliance with these safeguards. *Id.* at 97. Once compliance is shown, the trial court is to assess the reliability, and ultimately the admissibility of the testimony. *Id.*

In addition to being concerned with a hypnotized subject's receptivity to suggestion and tendency to confabulate, most courts have been equally concerned with a previously hypnotized witness' inclination

---

**2.** *Frye v. United States,* supra, held that before the results from a well-recognized scientific principle or discovery will be admitted into evidence, it must be sufficiently established that the principle or discovery has gained general acceptance in the particular field in which it belongs. *Id.* at 1014.

to confound pre-hypnotic and post-hypnotic memory and to boast increased confidence in his recollection. In both *State v. Collins*, supra, and *State v. Nazarovitch*, supra, the Courts rejected the argument that the defendant could attack the testimony of a previously hypnotized witness on cross-examination. Because of a witness' inability to distinguish between pre-hypnotic and post-hypnotic memory and his increased confidence in his recollection after having undergone hypnosis, the Courts reasoned that, in the absence of some memorialization of the witness' pre-hypnotic recollection, his recollection is not subject to cross-examination. See *State v. Collins*, supra at 1041–42; *Com. v. Nazarovitch*, supra at 174. The Court in *State v. Hurd*, supra, required that the hypnotist obtain a detailed description of the subject's recollection before inducing hypnosis. *Id.* at 96. The *Hurd* Court did not, however, address the problem of a previously hypnotized witness' increased confidence in his recollection.

■ This Court has carefully reviewed and considered the various approaches which the courts have taken with respect to hypnotic memory in light of Delaware law and the facts of this case. In the absence of expert testimony establishing the general reliability of hypnotically-enhanced memory in general and in the instant case in particular, the Court has determined that the witness should not be permitted to testify.

■ Before the results of a scientific process may be introduced into evidence, Delaware law requires that their reliability be established. *Fetters v. State*, Del.Supr., 436 A.2d 796 (1981); *Whalen v. State*, Del. Supr., 434 A.2d 1346 (1981), cert. denied, 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982); *Foraker v. State*, Del.Supr., 394 A.2d 208 (1978); see generally Del. Uniform Rules of Evid. 401, 402. In the instant case, the State failed to present expert testimony establishing the general reliability of hypnotic memory. Indeed, such

testimony may be currently unavailable. See generally Diamond, supra.

Furthermore, the State has failed to establish the reliability of the hypnotic recall it seeks to have admitted at trial. Even if the Court were inclined to adopt the safeguards enunciated by the Court in *State v. Hurd*, supra, rather than a rule of inadmissibility until such time as it is demonstrated that hypnotic recall is reliable, it is apparent that the State could not demonstrate compliance with the *Hurd* safeguards.

Dr. Galliani was employed by the State, a fact which suggests bias which could have translated into unintentional cues or other suggestive conduct, not evidenced on the videotapes. Secondly, the information communicated by the police to Dr. Galliani prior to the first hypnotic session was not recorded, and therefore, the Court cannot determine the extent of the information which could have been communicated to the witness through suggestion. Thirdly, since the witness had no recollection of the events of September 23 prior to (or even after) the first hypnotic session, the questions asked by Dr. Galliani concerning the incident could not have been free from suggestion. Fourthly, the only contacts between the witness and the hypnotist which were recorded were the hypnotic sessions themselves. Therefore, the Court cannot determine what suggestions the witness may have been given prior to and after undergoing hypnosis. Fifthly, a detective from the Delaware State Police was present during the hypnotic session, and while the detective did not ask the witness any direct questions, it is impossible for the Court to determine what effect the detective's presence might have had on the subject. Finally, there is no evidence to corroborate the accuracy of the witness' recollection.

While the standards set forth in *Hurd* are helpful in determining how suggestive a particular hypnotic session might have been, this Court declines to adopt a rigid set of safeguards. As the scientific community's understanding of human memory

and the effect of hypnosis thereon continues to develop, there may be other means by which courts can assess the reliability of hypnotic memory. Moreover, the *Hurd* safeguards do not address the concern raised by the Courts in *State v. Collins*, supra, and *Com. v. Nazarovitch*, supra, namely, a previously hypnotized witness' increased confidence in his recollection.

While this Court recognizes the value of hypnosis as a therapeutic and investigative tool, the State has not demonstrated that hypnotic recall is sufficiently reliable to be admitted as evidence at the criminal trial on this matter. Defendant's motion to suppress the testimony of the witness is, therefore, granted.

IT IS SO ORDERED.