OPINION OF THE COURT
Jasen, J.
The critical issue presented is whether a pretrial hearing must be held to determine whether a defendant’s ability to cross-examine a prosecution witness has been unduly impaired as a result of that witness’s having been hypnotized in an effort to learn additional details of the crime even though the hypnotic process did not lead to the discovery of any significant new facts and the witness’s testimony at trial mirrored statements which she had made prior to being hypnotized.
In the early morning hours of May 4,1979, a rape victim and her boyfriend were talking in his car while parked in *5 front of her home. The couple noticed two men walk by the car once and then again from the opposite direction. Shortly thereafter, the two men returned, wearing ski masks and brandishing a pistol and a shotgun or a rifle. The man with the pistol, later identified by the victim and her boyfriend as defendant James Tunstall, crouched by the curb and aimed the weapon at the victim’s head, while the other man, later identified as Robert Chamberlin, trained his gun on the boyfriend. The men then forced their way into the car, ordered the boyfriend into the back seat and drove away. After the boyfriend was robbed of $40, he was ordered out of the car. The two men then drove the victim to a nearby park where they raped and sodomized her. Afterwards, she was allowed to leave the car and the men drove away.
At approximately 10:30 a.m. on the same day, the victim reported the crime to the police and described the perpetrators and the details of the attack. The victim and her boyfriend returned to the police station on May 26,1979 to view photographs of previous offenders. The boyfriend examined the arrays alone and positively identified both defendant and Chamberlin as the men who accosted him. The victim then independently identified the same two individuals as her attackers. Both men were subsequently arrested and charged with rape, sodomy, robbery and grand larceny. The victim and the boyfriend independently identified Chamberlin and defendant once again after viewing them in a series of lineups conducted on June 4, 1979.
On December 7, 1979, the victim again related the events of May 4 in detail to an Assistant District Attorney. This statement was videotaped. Immediately thereafter, she was hypnotized in an effort to refresh her recollection as to any details of the crimes which she might have forgotten. The only further details elicited, however, were that defendant was wearing an army jacket and Chamberlin was wearing a plaid flannel shirt. The victim never testified to those details at trial and the People made no attempt to introduce them by other means.
The trial began on May 28, 1980, at which time the prosecutor turned over certain prior statements of the *6 victim (People v Rosario, 9 NY2d 286) to the defense, including the June 7, 1979 videotape interview of the victim and the subsequent hypnosis session. The following morning, defense counsel moved to suppress “any in-court identification of my client, Mr. Tunstall by [the victim]” on the ground that “the only purpose the District Attorney had in subjecting [the victim] to the procedure of hypnosis was to bolster her testimony.” Defendant also requested that a hearing be held to examine “the methods used in the conduction of this initial interview and the interview by the psychiatrist under hypnosis.” Defense counsel further requested that the videotape be transcribed so that he could use it at trial to cross-examine the victim. The prosecutor opposed all of defendant’s motions, basically because he did not intend to use at trial any statements which the victim made while under hypnosis. He did, however, agree to make the videotape available to defense counsel in the event he wished to use it at trial. The court denied defendant’s request for a pretrial hearing and also denied the motion to suppress any in-court identification made by the victim of defendant. The court, however, granted defendant’s request that the videotape of the hypnotic session not be introduced during the trial. In doing so, the court ruled that statements made under hypnosis are inherently unreliable and, therefore, inadmissible. At a later point in the trial, the court offered defendant the opportunity to use the videotape to impeach the victim’s direct testimony.
Defendant was convicted of five of the six counts of the indictment, the first degree robbery charge having been dismissed by the court at the end of the trial. The Appellate Division reversed and ordered a new trial to be preceded by a pretrial hearing “to determine ‘the extent of the witness’s prehypnotic recollection * * * and whether the hypnosis was so impermissibly suggestive as to require exclusion of in-court testimony with respect to such prehypnotic recollections’ ”.
While we agree with the Appellate Division that a pretrial hearing should have been held to determine what effect, if any, hypnosis had on defendant’s ability to cross-examine the victim, we do not believe at this time that a *7 new trial must be ordered. The order of the Appellate Division should, therefore, be modified accordingly.
The problems associated with allowing a witness who has previously been hypnotized to testify against a defendant at trial were recently given thorough consideration by this court. (See People v Hughes, 59 NY2d 523.) In that case, we recognized that a witness may be affected in three primary respects as a result of having been hypnotized: (1) he may become susceptible to suggestions given intentionally or unintentionally by the hypnotist or others present during the session; (2) the subject may confabulate or intentionally fabricate incidents in order to fill memory gaps or to please those conducting the hypnotic session; (3) a witness who recalls an event under hypnosis which he had previously recollected may experience an artificially enhanced confidence in his subsequent recollection of that incident, thereby unfairly impairing defendant’s ability to cross-examine that witness. (People v Hughes, supra, at pp 534-535, 546.)
All three of these problems were at the forefront of our decision in Hughes. In that case, we stated that generally the extent of the witness’s prehypnotic recollections establishes the boundaries of admissible testimony (People v Hughes, supra, at p 546) and affirmed the order of the Appellate Division which granted defendant a new trial because the court denied the defendant’s motion to suppress the evidence obtained during the hypnotic session, and such evidence was introduced at trial.
By sharp contrast, the defendant in the appeal before us does not vigorously argue that the victim’s testimony at trial contained additional inaccurate facts recalled during or after hypnosis as a result of her allegedly increased susceptibility to external suggestions while under hypnosis or that she fabricated imaginary incidents to fill memory gaps. Indeed, such an argument would clearly fail, for the victim’s testimony at trial virtually mirrored the prehypnotic statements which she gave to the police and the prosecutor. Even defendant does not point to any facts which the victim testified to at trial that she had not mentioned to the police prior to being hypnotized.* Conse *8 quently, the two areas of concern identified in Hughes with respect to suggestibility, confabulation and fabrication are not at issue here.
What lies at the heart of this appeal, therefore, is defendant’s assertion that the victim’s confidence in her prehypnotic recollections, such as her identification of defendant, may have been artificially enhanced by the hypnotic process, thereby impairing defense counsel’s ability to conduct a meaningful cross-examination of her. It is precisely this concern which we termed the “major difficulty” underlying the use of hypnosis on persons who subsequently testify at trial. (People v Hughes, 59 NY2d 523, at p 546, supra; see, also, Diamond, Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness, 68 Cal L Rev 313, 339-340.) We also noted that the problem may become more serious where, as here, the hypnotist suggests to the subject that a particular event occurred or that the subject will remember everything when she returns to a normal state of consciousness. (People v Hughes, supra, at p 546.) Under these circumstances, defendant should have been afforded an opportunity to demonstrate that his ability to meaningfully cross-examine the victim was substantially impaired as a result of these alleged irregularities in the hypnotic process.
When the victim was hypnotized, she was told to review the events of May 4,1979 as if they were taking place on a television screen. At one point, after she was instructed to picture her attackers walking up the hill where she and her boyfriend were first accosted, Dr. Arann, the hypnotist, asked the victim: “Are they clearly in the light as they approach, where you first really got a good glimpse of them?” Because there was a serious dispute as to whether the victim ever had a good view of the two men, the hypnotist’s suggestion that she did get a “good glimpse” of them as they were “clearly in the light” may have strengthened the victim’s confidence in her prehypnotic identification of defendant as one of the men who attacked her. Furthermore, at the conclusion of the hypnotic ses *9 sion, the victim was told by the hypnotist that she would be able to remember everything that transpired during the session — thus possibly bolstering her confidence in the certainty of her prehypnotic recollections. To assess the effect, if any, that these and other statements made to the victim while she was under hypnosis may have had on defendant’s ability to meaningfully cross-examine her, a hearing is required. (People v Hughes, supra, at p 546.)
At that hearing, the court should take into consideration the amount of confidence the witness had in her initial recollections prior to being hypnotized, the extent of her belief in the ability of hypnosis to yield the truth, the degree to which she was hypnotized, the length of the session, the type and nature of questioning employed, the effectiveness of the hypnosis in yielding additional details, and any other factors which the court may deem important based upon the specific facts and circumstances of this case. (Id.) On the legal issue raised, the prosecutor will have the burden of demonstrating by clear and convincing proof that there has been no substantial impairment of the defendant’s ability to meaningfully cross-examine the victim. (Id., at p 547.)
Inasmuch as it cannot be said on the record before us that reversible error was committed at trial, there is no need at this time to order a new trial. Instead, the case should be remitted to Supreme Court for purposes of conducting the aforesaid hearing. If it is decided after the hearing that defendant’s ability to meaningfully cross-examine the victim was not substantially impaired by the hypnosis, the judgment of Supreme Court convicting defendant, upon a jury verdict, should be reinstated and amended to reflect the determination made at the hearing. On the other hand, should a contrary determination be made, a new trial must be held (see People v Brown, 62 NY2d 743) at which the testimony of the victim may be limited or excluded entirely depending on the findings.
As to defendant’s remaining legal contentions, we find no basis for ordering a new trial. Although a defendant is entitled to introduce evidence concerning hypnotic procedures used on a witness, to offer expert testimony regarding the effect of hypnosis on a witness’s recollection *10 and to have the court give an appropriate charge to the jury (People v Hughes, 59 NY2d 523, at p 548, supra), the defendant here made no such demands. As a result, he cannot now assert as a ground for affirmance that he was barred from offering evidence to attack the hypnotic process itself. Defendant likewise failed to object to the prosecutor donning a ski mask in front of the jury and, therefore, has not preserved that issue for our review. (People v Cona, 49 NY2d 26, 33.) The court’s refusal to allow defendant to don the mask was not an abuse of discretion. Finally, we agree with the Appellate Division for the reasons stated thereat that it was not reversible error to admit into evidence videotapes of the lineups in which defendant was identified.
Accordingly, the order of the Appellate Division should be modified to provide for a hearing on the effect, if any, of hypnosis on defendant’s ability to meaningfully cross-examine the victim and if it is determined that said ability to meaningfully cross-examine was substantially impaired by virtue of the hypnosis, a new trial must be ordered. If the determination is in favor of the People, an amended judgment should be entered to reflect that determination which would be subject to appellate review if desired.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Order modified and case remitted to Supreme Court, Richmond County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 We note that the only new details which the victim recalled under hypnosis were *8 that defendant was wearing a type of army jacket, while Chamberlin wore a plaid shirt. Inasmuch as the victim could not subsequently recall having mentioned these details and did not refer to them at trial, the fact that she recalled them under hypnosis does not provide defendant with any basis for complaint.