James M. ELLIOTTE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 30, 1986.
Decided: Oct. 1, 1986.

Laurence I. Levinson, Wilmington, for defendant below, appellant.

Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for plaintiff below, appellee.

Before CHRISTIE, C.J., and McNEILLY and MOORE, JJ.

CHRISTIE, Chief Justice:

Defendant James M. Elliotte was convicted in Superior Court of murder second degree and the possession of a deadly weapon during the commission of a felony in connection with the shooting death of Bernice Makuck. On appeal, defendant raises two distinct issues: first, whether the "in open court" requirement of 11 *Del.C.* § 2543(c) was satisfied when a judge granted a continuance during an in-chambers conference attended by counsel for the defendant and the prosecution; and second, whether the trial judge erred in allowing a witness who had been hypnotized before trial to testify consistent with a statement she made to the police prior to undergoing hypnosis. We find no error in either ruling.

I.

After the shooting on October 9, 1981, which gave rise to the charges in this case, defendant fled. He later surrendered to authorities in Maryland where he was tried on unrelated charges. Following his conviction and sentencing in Maryland, defendant was returned to Delaware on December 12, 1983, under the Uniform Agreement on Detainers, 11 *Del.C.* §§ 2540–2550, at the request of the Department of Justice. Trial on the Delaware charges was set for February 15, 1984. At a conference on December 28, 1983, held in chambers and attended by the assistant public defender representing defendant and the prosecutors assigned to the case, the trial date was changed at the request of defense counsel. The trial was rescheduled several more times, and it finally got underway on October 1, 1984.

Defendant claims that the continuance granted by a Superior Court judge in a conference attended by defense counsel and prosecutor violates the "in open court" requirement of the Uniform Agreement on Detainers. The relevant section of the law requires that trial be commenced within 120 days of the arrival of the prisoner in the receiving state, "but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction may grant any necessary or reasonable continuance." 11 *Del.C.* § 2543(c). Defendant does not dispute that the continuance was granted for good cause. His argument focuses solely on whether granting the continuance with defense counsel present in chambers was such a departure from the "in open court" requirement as to render the later conviction invalid.

Under the circumstances of this case, we hold that the conference in the presence of the defendant's counsel amounted to substantial compliance with the "in open court" requirement since it occurred at defendant's request and in an adversarial context. The purpose of the requirement is "to prohibit *ex parte* and *sua sponte* continuances." *United States v. Ford,* 550 F.2d 732, 743 n. 30 (2nd Cir. 1977), *aff'd sub nom., United State v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Whether a judge presides in a courtroom or in the chambers is immaterial if the defendant is represented by counsel. *United States v. Odom,* 674 F.2d 228 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982).

Although a panel of the 6th Circuit concluded in *Stroble v. Anderson,* 587 F.2d 830, 839 (1978), that "in open court" meant "a judge on the bench," that case dealt

with a situation where continuances were granted in the absence of defense counsel. The reasoning of the *Stroble* decision is not applicable in a case such as this, where the defendant was represented by counsel at in-chambers proceedings. *Odom*, 674 F.2d at 231. We also note the continuance here granted had been sought by the defense, and there is no evidence that the defense requested that the court convene to grant its request. There is also no evidence of any prejudice to defendant.

## II.

On the day following the shooting, October 10, 1981, Ms. Vicki Combs gave a statement to the police in which she said that she was present when the shooting occurred, along with defendant and the victim, and that the defendant had a gun in his possession. She also said that the shooting was an accident. In November of 1981, Combs, who was at that time charged with conspiracy in connection with the alleged murder, went with her attorney to a physician who placed her under hypnosis. Her attorney then asked her questions about the shooting. Due to a malfunctioning tape recorder, no record was made of the session. In February of 1982, Combs gave a second statement to the police consistent with the first statement except that she then expressed the opinion that the shooting was deliberate.

The Superior Court made a pretrial ruling that Combs would be permitted to testify to the substance of her prehypnotic statement to the extent that her prehypnotic and posthypnotic statements were consistent and subject to the determination by the trial judge following *voir dire* that the defendant's right to cross-examination had not been substantially impaired as a result of hypnosis. Following *voir dire*, the trial judge found that the two statements to the police were generally consistent, except for the witness's conclusion about the defendant's intention, and that the *voir dire* examination demonstrated that the witness could be effectively cross-examined. He ruled that the witness's factual testimony would be admitted to the extent that it was consistent with her prehypnotic statement.

At trial, Combs testified that when the shooting occurred, she was present in a room with the defendant and the victim, and that defendant was in possession of a gun. She did not testify about her prehypnotic or posthypnotic opinions concerning defendant's state of mind.

Defendant contends that the trial judge erred in permitting Combs to testify at trial. Defendant says her testimony should have been ruled inadmissible because the State failed to prove that the hypnosis performed on Combs did not substantially impair defendant's right to cross-examination. The sole issue here is whether, and under what conditions, a witness may give factual testimony at trial which is consistent with a statement made prior to undergoing hypnosis.[1]

Although this Court has never ruled on the admissibility of prehypnotic recollections, several jurisdictions have addressed the issue. *E.g., People v. Hughes*, N.Y.Ct. App., 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (1983); *People v. Shirley*, Cal. Supr., 31 Cal.3d 18, 181 Cal.Rptr. 243, 723 P.2d 1354, *cert. denied*, 458 U.S. 1125, 103 S.Ct. 13, 73 L.Ed.2d 1400 (1982) (collecting cases). A major difficulty with prehypnotic testimony is the danger that hypnosis may artificially enhance a witness's confidence in his prior recollection, and this in turn could inhibit meaningful cross-examination. *Hughes*, 466 N.Y.S.2d at 266, 453 N.E.2d at 496. After examining the published views

---

1. Because the trial judge limited the scope of Combs' testimony to facts consistent with her October 10, 1984 statement to the police, prior to her hypnosis in November 1984, this appeal is not concerned with the issue of whether a witness may testify to events first recalled while under hypnosis, or after hypnosis. *Cf. State v.*

*Davis*, Del.Super., 490 A.2d 601 (1985) (where witness had no recollection of events in question prior to hypnosis, testimony of witness who had undergone hypnosis to refresh her recollection held inadmissible in the absence of expert testimony establishing the general reliability of hypnotically-enhanced memory).

of leading representatives of the scientific community, the Pennsylvania Supreme Court recently concluded that "the hypnotic subject, upon awakening, is often imbued with a confidence and conviction as to his memory which was not present before. Prehypnosis uncertainty becomes molded ... into certitude.... The subject's firm belief in the veracity of his enhanced recollection is honestly held, and cannot be undermined through cross-examination. *Commonwealth v. Nazarovitch*, Pa.Supr., 496 Pa. 97, 436 A.2d 170, 174 (1981) (holding hypnotically-refreshed testimony inadmissible where the witness had no recollection of relevant facts prior to hypnosis).

Despite the concern expressed in the *Hughes* and *Nazarovitch* decisions, courts in nearly all states which have addressed the narrow issue before us have ruled that testimony as to prehypnotic recollections is admissible. For example, soon after the *Nazarovitch* decision, the Superior Court of Pennsylvania ruled that a rape victim's testimony identifying her two attackers was admissible because the victim had identified the attackers prior to undergoing hypnosis. *Commonwealth v. Taylor*, 294 Pa.Super. 171, 439 A.2d 805 (1982). Courts of several other states which have held hypnotically-refreshed testimony inadmissible nevertheless permit a witness to testify regarding events recalled prior to hypnosis. *See* Note, *Admissibility of Hypnotically Refreshed Testimony*, 20 Wake For.L.Rev. 223, 241 n. 160 (1984); *State ex rel. Collins v. Superior Court*, Ariz.Supr., 132 Ariz. 180, 644 P.2d 1266 (1982) (testimony on prehypnotic recollections admissible provided that the extent of such recollections is recorded prior to hypnosis); *People v. Quintanar*, Colo.App., 659 P.2d 710 (1982) (witness may testify to prehypnotic recollections previously disclosed); *People v. Wallach*, Mich.Ct.App., 110 Mich.App. 37, 312 N.W.2d 387 (1981) (witnesses can testify about those aspects of the case remembered prior to undergoing hypnosis); *State v. Patterson*, Neb.Supr., 213 Neb. 686, 331 N.W.2d 500 (1983) (witness may testify to matters that witness can recall and relate

prior to hypnosis); *People v. Hughes*, N.Y. Ct.App., 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (1983) and *People v. Tunstall*, N.Y.Ct.App., 63 N.Y.2d 1, 479 N.Y. S.2d 192, 468 N.E.2d 30 (1984) (prehypnotic testimony admissible if party offering it can prove that hypnosis did not substantially impair opposing party's right to cross-examination); *Contra, People v. Shirley*, Cal. Supr., 31 Cal.3d 18, 181 Cal.Rptr. 243, 723 P.2d 1354 (1982) (a witness who has been hypnotized is unable to testify even as to prehypnotic recollections).

In the *Hughes* and *Tunstall* decisions, the New York Court of Appeals ruled that a pretrial hearing must be held to determine whether prehypnotic testimony will be admitted. The *Hughes* decision set forth two general lines of inquiry to be pursued at the hearing. It ruled that first, the court must examine evidence to determine the scope and content of the prehypnotic recollection of the witness. 466 N.Y. S.2d at 266, 453 N.E.2d at 496. Second, the court must determine whether "the hypnosis was so impermissibly suggestive as to require exclusion of in-court testimony with respect to such prehypnotic recollection." *Id.* Although the court concluded that it would be inappropriate to formulate rigid guidelines for the conduct of hypnotic sessions, it suggested that "detailed proof should be introduced as to the precise procedures that were followed." *Id.* Because of the unique and sometimes unfathomable consequences of hypnosis, the court placed on the party who arranged and supervised the hypnosis the burden to "demonstrate by clear and convincing proof that the testimony of the witness as to his or her prehypnotic recollection will be reliable and that there will be no substantial impairment of the defendant's right to cross-examination." *Id.*, 466 N.Y.S.2d at 267, 453 N.E.2d at 497.

In *People v. Tunstall*, N.Y.Ct.App., 63 N.Y.2d 1, 479 N.Y.S.2d 192, 468 N.E.2d 30 (1984), the New York Court of Appeals applied the approach taken in the *Hughes* case to a case somewhat similar to the

appeal before us. Prior to trial, the police had persuaded a rape victim to undergo hypnosis in an attempt to obtain additional details about the crime after she had identified her attacker in a photographic lineup. The State did not attempt to enter into evidence the few additional details which hypnosis yielded; however, defense counsel argued that the victim should not even be allowed to identify the defendant in court because the hypnosis was intended to bolster her confidence in her testimony. *Tunstall*, 479 N.Y.S.2d at 194, 468 N.E.2d at 32. In remanding the case to the trial court for a hearing on whether the hypnosis substantially impaired the defendant's ability to cross-examine the victim, the Court instructed the trial court to consider:

(1) The amount of confidence the witness had in her initial recollection prior to being hypnotized;

(2) The extent of her belief in the ability of hypnosis to yield the truth;

(3) The degree to which she was hypnotized;

(4) The length of the session;

(5) The type and nature of questioning employed; and

(6) Any other factors which the court may deem important based upon the specific facts and circumstances of this case.

*Id.*, 479 N.Y.S.2d at 196, 468 N.E.2d at 34.

In the case before us, the Superior Court adopted the general approach taken in New York in the *Hughes* and *Tunstall* cases but without barring the evidence on account of a lack of verbatim record of the hypnotic session. In effect, the court found, following *voir dire*, that Combs' prehypnotic recollections could be reliably determined and concluded that she could be effectively cross-examined thereon. On appeal, defendant emphasizes the State's alleged inability to prove by "clear and convincing evidence" that Combs did not undergo impermissibly suggestive questioning while under hypnosis. Defendant also asks the Court to rely on six procedural safeguards adopted by the New Jersey Supreme Court to minimize the possibility of improper suggestion.[2] *State v. Hurd*, N.J.Supr., 86 N.J. 525, 432 A.2d 86, 96–97 (1981). Defendant argues that, in light of the State's failure to introduce evidence showing that these safeguards were met, the State failed to prove that the hypnosis was not improperly suggestive.

Consistent with the general approach taken in New York and other jurisdictions we conclude that pretrial use of hypnosis does not necessarily render the witness incompetent to testify to events recalled prior to being hypnotized. We also rule that it is necessary to conduct a hearing to determine whether hypnosis has substantially impaired the defendant's ability to cross-examine the witness or was otherwise improper. At such a hearing, the court first must decide whether the scope of the witness's prehypnotic recollection can be reliably determined by evidence (which in this case was a statement to the police). Second, the court should consider the six factors set forth in the *Tunstall* case (see above), to the extent information is available, to determine whether, given the totality of the circumstances, the party seeking to introduce the testimony has shown by clear and convincing evidence that hypnosis did not so enhance the witness's confidence in his or her testimony that the opposing party's right to cross-examination has been substantially impaired. If the scope of the witness's prehypnotic recollection can be reliably determined, and

---

**2.** The standards were briefly summarized in the *Hughes* case as follows: (1) the hypnotic session should be conducted by a psychiatrist or psychologist experienced in the use of hypnosis; (2) he or she should be independent, not regularly employed by either party; (3) any information given to the hypnotist should be recorded; (4) before inducing hypnosis, the hypnotist would obtain a detailed description of the facts the subject presently recalls, and should avoid influencing the description; (5) all contacts between the hypnotist and the subject should be recorded; (6) only the hypnotist and the subject should be present during any phase of the hypnotic session. 466 N.Y.S.2d at 265, n. 33, 453 N.E.2d at 494, n. 33.

if the party proffering the evidence meets its burden of proving no substantial impairment of the right to cross-examination, the witness may testify within the scope of his prehypnotic recollection.

We leave for another day resolution of the question of whether testimony about events first recalled under hypnosis, sometimes called hypnotically refreshed testimony, is admissible in Delaware. *But see* Superior Court decision cited *supra* n. 1.

 We find no error of law or abuse of discretion in the ruling of the trial judge that Combs' hypnosis did not render her testimony inadmissible. In the *Hughes* case, the New York Court of appeals recognized that "in some cases where the witness was quite confident in this initial recollection and hypnosis was employed unsuccessfully to yield additional details, there may be little or no impairment of the defendant's power to cross-examine." 466 N.Y.S.2d at 267, 453 N.E.2d at 496. This appears to be such a case. Combs was confident of the elementary facts she related in her prehypnotic statement to the police: i.e., that she was in a room with the defendant and the victim when the shooting occurred, and that the defendant was in possession of a gun. Her posthypnotic statement contained no additional details; only her opinion about defendant's motive changed, and she gave no court testimony on her prehypnotic or posthypnotic opinions as to defendant's intent or motive.

The burden of showing that Combs' hypnosis was not improperly suggestive was not as heavy here as it would be in cases where the prosecutor conducted or arranged the hypnosis. In those situations, a greater danger may exist that prosecutorial zeal could lead to improperly suggestive questioning. Here, the witness elected to undergo hypnosis which was arranged by her public defender in order to determine whether she had "blocked out" any memories about the shooting. In this case it may be less likely that hypnosis would artificially enhance the witness's confidence in her prior recollections.

In view of the totality of the circumstances, we agree with the ruling of the trial court that the State met its burden of demonstrating by clear and convincing proof that the defendant's ability to cross-examine Combs was not substantially impaired by the hypnosis. We also agree that the absence of a record of the hypnotic session, given the peculiar circumstances of this case, did not necessarily dictate that none of her testimony was admissible. However, the better practice in future cases would be to hold no hypnotic sessions with any prospective witness unless it is accurately and completely recorded, preferably on video-tape.

\* \* \*

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.