OPINION OF THE COURT
Alexander, J.
 We established in People v Hughes (59 NY2d 523) that posthypnotic testimony, to the extent it is affected by the prior hypnosis, is not admissible as evidence-in-chief because of its inherent unreliability. Implicit in our decision in Hughes is the conclusion that statements made during the hypnotic procedure are also inadmissible on direct examination, at least to the extent they differ from the subject’s prehypnotic statements. We hold today that such hypnotic statements are, as a general rule, also inadmissible for purposes of impeachment. *193 Moreover, the application of this general rule to a criminal defendant who conceded the unreliability of the hypnotic statements he seeks to use for impeachment is not barred by any constitutional considerations. Accordingly, the statements made by the complainant during her hypnotic procedure were properly excluded at defendant’s trial. Thus, we affirm the order of the Appellate Division upholding his conviction.
I
The trial testimony established that on Saturday March 27, 1982 in Floral Park, defendant, while driving a large, white, four-door car with a black vinyl roof, offered the complainant a ride. She accepted, initially intending to be taken to a nearby bus stop, but thereafter accepting defendant’s offer to take her a few blocks further. The complainant described the defendant as a man of medium build, "medium to fair-skinned”, "scruffy” or unshaven, and with blondish hair and blue eyes. According to the complainant, defendant wore a blue gas station uniform with an Exxon patch sewn on it, had greasy hands and fingernails and smelled of liquor. As they drove, defendant told the complainant that he worked at an Exxon station in Elmont and that he had attended, but had not graduated from, Carey and Van Burén High School. Defendant also stated that he was divorced and had two children, a seven-year-old son and a two-year-old daughter. The complainant noticed a baby seat in the backseat of the car. Finally, defendant drove into an empty parking lot where he sodomized the complainant at knifepoint. The entire incident lasted approximately 35 to 40 minutes. After she was released, the complainant called her aunt and uncle, who notified the police.
Defendant was arrested approximately three months later when observed by the police in his girlfriend’s white, four-door Ford Torino with a black vinyl roof and a baby seat in the back. At the time, defendant had a moustache and was wearing a blue shirt with an Exxon patch. After waiving his Miranda rights, defendant stated that he worked at an Exxon station in West Hempstead, that he lived in Floral Park, that he had worked on the day of the crime and that on his usual route to and from work he drove by the intersection of Plainfield Road and Jericho Turnpike where the complainant had been picked up. Defendant also told the police that he had attended, but not graduated from, Carey and Van Burén High *194 School and that he was divorced and had two children — a son and a daughter. On the day of his arrest, the complainant identified the defendant’s voice and also identified him in a lineup, notwithstanding that she had never described her attacker as wearing a moustache. Defendant was subsequently indicted.
At defendant’s arraignment, defense counsel was advised that as part of the police investigation, the complainant had undergone hypnosis approximately three weeks after the crime. After arraignment, but prior to trial, this court decided People v Hughes (59 NY2d 523, supra), holding a witness’ testimony inadmissible to the extent it was influenced by prior hypnosis, and People v Tunstall (63 NY2d 1), holding that a defendant was entitled, upon motion, to a hearing to determine the admissibility of testimony of a previously hypnotized witness. At no time prior to trial, however, did defendant move for a Hughes-Tunstall hearing to determine whether the complainant’s proposed testimony was affected by her prior hypnosis. Complainant testified at the trial and, although he had not moved for a Hughes-Tunstall hearing, defendant sought to impeach the complainant’s trial testimony with inconsistent statements she made while under hypnosis. The most significant inconsistency defense counsel sought to reveal was that while at trial the complainant could recall only that her assailant’s blue shirt had the name "Exxon” on it, when under hypnosis, she had stated that her assailant’s shirt bore the name "Billie”. Other evidence at trial established that the defendant’s work shirts had only his own name, "Mike”, on them. County Court sustained the prosecutor’s objection to this possible use of the complainant’s hypnotic statements, reasoning that the rule of People v Hughes (supra) prohibited the admission of such testimony whether on direct or cross-examination. Defendant was convicted of sodomy in the first degree.
The Appellate Division reversed, for reasons unrelated to this appeal, and ordered a new trial (People v Hults, 122 AD2d 857). That court noted, however, that at the new trial, the defendant could not seek to impeach the complainant with her prior statements made under hypnosis.
More than four months later, defense counsel sought a Hughes-Tunstall hearing to determine if the complainant’s proposed trial testimony was affected by her prior hypnosis. County Court denied the application, noting that defense *195 counsel had been aware of both the facts and the law relating to the complainant’s hypnosis well before the first trial but had not then sought such a hearing. The court declined to exercise its discretion to excuse counsel’s delay in seeking the hearing (see, CPL 255.20).
Prior to the second trial, the prosecutor revealed that any videotape or other record of the complainant’s hypnotic procedure had been inadvertently lost in the five years since the procedure had been conducted. The prosecutor also noted the possibility that a preinduction statement had been taken from the complainant prior to her hypnosis and that such a statement, if it existed, was lost as well. Defendant, in effect, renewed his Hughes-Tunstall motion, seeking to preclude the complainant’s trial testimony because the loss of the records of the hypnotic session made it impossible for the People to demonstrate that her trial testimony was not affected by the pretrial hypnosis and, alternatively, moved to preclude the complainant from testifying to posthypnotic recollections. Both motions were denied, although the trial court ruled that defendant could litigate the Hughes issue at trial. Thus, the parties stipulated that the records of the complainant’s hypnotic session were irretrievably lost through no fault of the District Attorney’s office. At the close of the People’s case, defendant moved for a trial order of dismissal, arguing that the People had failed to establish, by clear and convincing evidence, that the complainant’s trial testimony was unaffected by her prior hypnosis. The motion was denied, and, on his direct case, defendant presented expert evidence of the unreliability of hypnosis and argued that without a proper record of the complainant’s hypnosis, it was impossible to tell to what extent her testimony was affected by the prior hypnosis. In addition, defendant again sought to impeach the complainant’s trial testimony by introducing her prior hypnotic statements. County Court denied the application, ruling that the Appellate Division determination of the issue on the prior appeal was the law of the case. Prior to summations, defendant moved to strike the complainant’s testimony on the ground that the loss of her preinduction statement violated People v Rosario (9 NY2d 286). The prosecutor represented that it was not known whether a preinduction statement had ever been taken in this case and County Court denied the motion. Finally, on summation, defendant argued the unreliability of statements made as a result of improper hypnotic procedures. He urged the jury to discredit the complainant’s *196 identification of the defendant, contending that the identification was the product of suggestion or confabulation caused by the hypnosis.
Defendant was again convicted of sodomy in the first degree. The Appellate Division affirmed and defendant appeals by leave of an Associate Judge of this court.
Defendant’s primary contentions on this appeal are that County Court abused its discretion in denying his application for a Hughes-Tunstall hearing and that the court’s ruling precluding his use of the complainant’s hypnotic statements for impeachment unconstitutionally restricted his cross-examination of her.
We now affirm.
II
We reject defendant’s contention that County Court abused its discretion in denying his belated application for a Hughes-Tunstall hearing. Defendant has made no showing of good cause for his failure to bring the motion either before the first trial or even within 45 days of the Appellate Division order directing a new trial (see, CPL 255.20). Defense counsel was advised of the complainant’s hypnosis at defendant’s arraignment and is chargeable with knowledge of our decisions in People v Hughes (supra) and People v Tunstall (supra) at the time they were decided — months before the first trial. By failing to timely request a Hughes-Tunstall hearing to determine the admissibility of the complainant’s proposed trial testimony, defendant has waived the issue (People v Key, 45 NY2d 111, 116).
The novel question presented on defendant’s appeal is whether the general rule articulated in People v Hughes (supra) may be extended to preclude defendant’s use of the complainant’s hypnotic statements on cross-examination. Defendant contends that the rule of Hughes is limited to the introduction of hypnotic statements or statements affected by a prior hypnosis on the direct case, and therefore has no bearing upon the use of hypnotic statements for cross-examination. In any event, defendant urges, the State cannot constitutionally restrict his cross-examination of a prosecution witness by precluding his use of such hypnotic statements.
In People v Hughes (59 NY2d 523, 543, supra) we held inadmissible as direct evidence posthypnotic testimony affected by the hypnosis because hypnosis was not, at that time, *197 generally accepted as reliable in the scientific community (see also, People v Shedrick, 66 NY2d 1015; People v Allweiss, 48 NY2d 40; People v Leone, 25 NY2d 511; Frye v United States, 293 F 1013). We explained that hypnosis was not a reliable method of refreshing recollection because the hypnotic procedure is inherently suggestive and affects the subject in at least three ways: (1) the subject may be susceptible to suggestions given intentionally or unintentionally by the hypnotist or others present during the session; (2) the subject may confabulate or intentionally fabricate events in order to fill in memory gaps; and (3) a witness who has been hypnotized may experience an enhanced confidence in his or her memory of an incident, thereby unfairly impairing a defendant’s ability to cross-examine the witness about the event (People v Hughes, 59 NY2d, at 534-535; People v Tunstall, 63 NY2d 1, 7, supra). Implicit in Hughes is the conclusion that statements made during the hypnosis itself are inadmissible on direct, at least to the extent that they differ from the witness’ prehypnotic statements. As with hypnotically refreshed recollections, the unreliability of such hypnotic statements has been well documented (see, e.g., Beaudine, Growing Disenchantment With Hypnotic Means of Refreshing Witness Recall, 41 Vand L Rev 379, 400-405 [citing scientific studies]).
Defendant has not submitted any evidence that the consensus within the scientific community as to the unreliability of hypnosis has changed since our decision in Hughes and thus tenders no basis for us to reconsider our determination that posthypnotic testimony, to the extent affected by the hypnosis, is not admissible as evidence-in-chief. Moreover, we see no reason in this case to limit the rule of Hughes to permit a litigant to introduce on cross-examination, even for the limited purpose of impeachment, hypnotic statements which are inadmissible on direct. In either situation, the probative value of the hypnotic statement is directly related to its reliability. The first two dangers of hypnosis recognized in Hughes— suggestion and confabulation or fabrication — relate to all hypnotic statements, whether they are sought to be introduced as evidence-in-chief or as prior inconsistent statements for the purpose of impeachment.
It is true, as defendant argues, that some evidence which is inadmissible as evidence-in-chief is nevertheless admissible on cross-examination. Thus, prior inconsistent statements, which might be inadmissible hearsay if introduced on direct, are admissible for impeachment because placing the inconsistency *198 before the jury serves the truthtesting function of cross-examination which is integral to our adversary system (see generally, McCormick, Evidence § 34 [3d ed]; Richardson, Evidence §§501, 502 [Prince 10th ed]). However, a prior statement which is involuntarily made is inherently unreliable and totally lacking in probative value. Such a statement cannot serve this truthtesting function, even if used only for the limited purpose of impeachment. Thus, a statement actually coerced from a defendant is inadmissible for all purposes (Mincey v Arizona, 437 US 385, 399). By contrast, a defendant’s statement, voluntarily made but obtained in violation of Miranda v Arizona (384 US 436), is inadmissible on the prosecution’s direct case but may nevertheless be used for impeachment where "the trustworthiness of the evidence satisfies legal standards” (New York v Harris, 401 US 222, 224, affg 25 NY2d 175; see also, People v Washington, 51 NY2d 214). While these cases arise in the context of protecting a defendant’s right to due process and the privilege against self-incrimination, the rule serves the truthtesting function of cross-examination by permitting a statement, which is trustworthy at least to the extent it is voluntary, to be used for impeachment (New York v Harris, 401 US, at 225-226).
A hypnotic statement, however, may be the product of suggestion or confabulation and thus not fairly the witness’ own. Even if such a statement is inconsistent with a witness’ trial testimony, because of the statement’s unreliability, the inconsistency simply is not probative of the truth or falsity of the witness’ subsequent trial testimony. Thus the fact that the statement is not offered "assertively”, for its own truth (see, dissenting opn, at 202), is beside the point. Such a hypnotic statement, even when offered solely for the purposes of impeachment, may properly be excluded.
That determination, however, does not end the inquiry. Notwithstanding the general rule of Hughes precluding the use of hypnotically induced testimony on direct, a necessary exception exists when a criminal defendant testifies in his own defense. In Rock v Arkansas (483 US 44, 61), the Supreme Court held that a State’s per se rule prohibiting the admission of posthypnotic testimony could not be applied to all criminal defendants seeking to testify in their own defense absent some consideration of whether indicia of reliability supported the admission of the hypnotic statements. Significantly, the court recognized the State’s legitimate interest in excluding unreliable evidence such as hypnotic statements, but held that the *199 State could not preclude a defendant’s testimony to such statements without proving the unreliability of the statements sought to be offered (id.). A sufficient demonstration of the unreliability of a defendant’s hypnotic statement in a particular case, however, would justify exclusion of the testimony (id.).
The right to cross-examination, like the right to present evidence, is integral to our adversary trial process and a fundamental right secured to a criminal defendant by the Confrontation Clause of the Sixth Amendment (Lee v Illinois, 476 US 530, 540; Davis v Alaska, 415 US 308, 315-316; Pointer v Texas, 380 US 400, 404; see also, People v Cintron, 75 NY2d 249). It is argued therefore, that a defendant’s right of cross-examination may not be arbitrarily infringed by a per se rule of evidence excluding the use of hypnotic statements to impeach a prosecution witness. On the other hand, unlike the relevant testimony to be proffered by a criminal defendant, the scope of cross-examination is within the sound discretion of the Trial Judge (Delaware v Van Arsdall, 475 US 673, 678; People v Coleman, 56 NY2d 269, 273) and like the exclusion of a physically coerced statement (Mincey v Arizona, supra) the exclusion of an inherently unreliable hypnotic statement may be within the Judge’s discretion.
We need not resolve the issue in this case, however, because even assuming that the Constitution requires an exception to the general exclusion of hypnotic statements, it is clear that the State may constitutionally exclude hypnotic statements which have been demonstrated to be unreliable (Rock v Arkansas, 483 US, at 61, supra). This defendant, at his second trial, conceded the unreliability of the complainant’s hypnotic statements. In an effort to undermine her trial testimony, defendant presented expert evidence to the jury to demonstrate the suggestiveness of hypnotic procedures and argued that without a videotape of the hypnotic session, it was impossible to determine the extent to which her trial testimony was tainted by the prior hypnosis. Having argued that the complainant’s hypnotic statements are unreliable as the product of an inherently suggestive procedure, defendant was not free to introduce some of those same hypnotic statements for the purpose of impeachment.
We have reviewed defendant’s remaining contentions to the extent they have been preserved for our review and conclude that they are without merit.
*200 Accordingly, the order of the Appellate Division should be affirmed.