OPINION OF THE COURT
Richard D. Rosenbloom, J.
This action was brought by plaintiff Rachel Bennett as guardian and parent of Tenickie London (referred to herein as plaintiff) against defendant Saeger Hotels, Inc. for negligently *80 contributing to injuries sustained by Ms. London on July 16, 1989.
In April 1992, plaintiff brought a motion seeking, in part, an order that evidence regarding plaintiff’s version of the accident obtained under and after hypnosis will be admissible at the trial of the action. Defendant cross-moved for an order requiring disclosure of any video tapes of any hypnosis sessions involving the plaintiff. On June 23, 1992, the court signed an order granting the defendant’s cross motion and requiring plaintiff to produce a true and complete copy of video tapes of any hypnosis sessions. Copies of the video tapes were produced sometime in late November 1992.
The present application is a motion in limine brought by defendant seeking to restrict plaintiff’s trial testimony concerning her recollection of the events of the evening in question to testimony which is in accordance with and limited to her recollection of the events as testified to at her first examination before trial on September 12, 1991. The court considered the extensive discussion of the problems associated with hypnosis in People v Hughes (59 NY2d 523 [1983]) and People v Tunstall (63 NY2d 1 [1984]). Although these decisions were made in the context of criminal proceedings, the effect of hypnosis on the competence of a witness must be addressed in civil cases as well. The court followed the guidelines of the Court of Appeals and held a pretrial hearing on March 25 and 26, 1993 at which all video tapes were viewed and testimony was taken from Robert Goldstein, Ph D, Peter Cormack, Ph D, plaintiff, and her mother.
After reviewing the evidence presented at the pretrial hearing and considering the arguments and memoranda of counsel, the court decides as follows:
FINDINGS
1. On Sunday, July 16, 1989, plaintiff Tenickie London and a friend went to The Cadillac Hotel owned by defendant. They went to a room on the seventh floor of the hotel where her friend’s cousin, Vida Lowery, resided. At approximately 11:30 p.m., plaintiff decided to leave the hotel to return home and, before leaving, she went to use the bathroom. Thereafter, plaintiff was found lying on the third story roof of an adjacent building, having sustained serious injuries to her lower extremities and spinal cord. This action was commenced in 1990.
2. On September 12, 1991, plaintiff testified at an examina *81 tian before trial that after she went into the bathroom, her last recollection is the doorknob moving and turning. She recalled that this incident occurred close to 11:30 p.m. She stated that she did not turn the doorknob and that she heard loud voices outside the bathroom door. She testified that she heard Vida Lowery arguing with one of her sons outside the door. She denied being assaulted or attacked by anyone. Plaintiffs next recollection is being at Strong Memorial Hospital and being questioned by either a doctor or a nurse.
3. Following the accident on July 16, 1989, Rochester Police Department Sergeant Brian Conlon interviewed the plaintiff at the scene. She was alert and told him that she was scared because Vida Lowery was upset at finding her and Frank Gissendanner partially clothed, alone in the hotel room together. Ms. Lowery was yelling at her son, Frank. Plaintiff told Sergeant Conlon that she went out of the bathroom window to get away from Ms. Lowery. She did not think she was up that high, it was very dark, so she jumped. During a subsequent investigation conducted sometime during 1991 by plaintiffs attorney’s investigator, Michael Giardina, plaintiff advised a police investigator that she could not recall what happened on the evening in question.
4. On February 22, 1992, Dr. Peter Cormack, a clinical psychologist, met with plaintiff but, because she was upset and crying, the session was terminated. No video taped record of this session was preserved.
5. On March 6, 1992, Dr. Cormack attempted to place the plaintiff in a hypnotic trance. During this procedure, plaintiff provided a description of the events of the evening of July 16, 1989, including trying to get out of the bathroom and being grabbed by a tall, black man around the throat and observing Ms. Lowery and her son in the background. After this session, plaintiff told Dr. Cormack that she had no recollection of being hypnotized or of what was said.
6. On April 9, 1992, plaintiff had a second session with Dr. Cormack. She told him that she did not recall their previous session. Dr. Cormack then played the video tape of the session that occurred on March 6, 1992 for plaintiff. After viewing the video tape, plaintiff stated that the tape did not bring back any recollections.
7. On September 9, 1992, plaintiff testified at a second examination before trial. She stated that after she went into the bathroom, she recalled the doorknob turning. She testified *82 that she went to turn the knob so she could get out but she felt somebody pushing it closed. Finally, she testified that the door opened and standing in front of her was a tall, dark man, approximately 6 feet tall with a really heavy build. She also saw Vida Lowery and her son, David. She stated that she tried to get by and that the man grabbed her by the neck with one hand and they struggled. Plaintiff’s next recollection is being at Strong Memorial Hospital.
8. At the deposition on September 9, 1992, plaintiff testified that after the hypnosis session held on March 6, 1992, but before viewing the video tape of that session, she did not recall anything beyond what she knew before the hypnosis session. She further stated that her recollection changed only after she viewed the tape. However, she testified that other than what she saw in the tape, she had no additional recollection of the event since she last testified.
9. At the pretrial hearing, plaintiff testified that she had no increased recollection of the events prior to viewing the tape.
10. Defendant has not questioned plaintiff’s competence to testify as to her recollection prior to her sessions with Dr. Cormack and has not claimed any substantial impairment of its right to cross-examine her.
CONCLUSIONS
1. Plaintiff’s recollection of the events of July 16, 1989 was not enhanced by the procedures conducted by Dr. Cormack in February, March, and April 1992.
2. Defendant’s motion in limine to preclude "post-hypnotic” testimony is granted.
3. The extent of plaintiff’s prehypnotic recollection establishes the boundaries of admissible testimony at the trial of this action (People v Hughes, supra, 59 NY2d, at 546).
4. Accordingly, plaintiff is precluded from testifying to any additional facts which allegedly resulted from or were enhanced by the procedures conducted by Dr. Cormack.