OPINION OF THE COURT
Joseph G. Golia, J.
On July 10, 1987, a jury, rejecting the defense of not guilty *302 by reason of mental disease or defect, convicted Emanuel Santana, at a joint trial, on three counts of forcible rape, robbery, and sexual abuse. Although affirmed by the Appellate Division (172 AD2d 704 [1991]), the Court of Appeals in 1992, set aside the jury’s verdict and the. cases are now before this court on remand. (People v Santana, 80 NY2d 92 [1992].)
In order to establish the defense of lack of responsibility by reason of mental disease or defect, pursuant to Penal Law former § 30.05 (now § 40.15), the defendant wishes to introduce psychiatric testimony based, in part, upon information gathered from the defendant through the use of hypnosis. The People now submit a motion in limine to preclude this testimony supported by cases holding that memory which has been hypnotically refreshed is inadmissible as evidence due to its unreliability.
New York courts examined the admissibility of memory which has been hypnotically refreshed in the seminal case of People v Hughes (88 AD2d 17, affd 59 NY2d 523 [1983]). In Hughes, a complainant was precluded from testifying to her posthypnotic memories for identification purposes. Nothwithstanding that Court’s holding, it implicitly recognized hypnosis as a scientific procedure.
Hughes (supra) went on to apply the standard established by New York courts for determining the admissibility of evidence produced through scientific procedures. This standard, identical to the one set forth in Frye v United States (293 F 1013 [DC Cir 1923]), considers "whether the reliability of the results of a procedure is generally acknowledged in the scientific community”. (People v Hughes, supra, 88 AD2d, at 20.)
Using this standard (hereinafter referred to as the Hughes/Frye test), the Hughes Court determined that witnesses under hypnosis are highly susceptible to suggestion and that in their effort to cooperate, they are likely to fabricate or exaggerate in order to fill in the gaps in their actual memory. Moreover, witnesses having undergone an hypnotic session may not be able to distinguish between real and imagined memories and, therefore, their prehypnotic memories may be reinforced so that any prior doubts are dissipated.
Accordingly, that Court found that a witness’s memory, which has been hypnotically refreshed, is unreliable when offered for the truth of the matter asserted due to the dangers associated with the process of hypnosis.
Following this reasoning, People v Hults (76 NY2d 190 *303 [1990]) held that statements made by the complainant while under hypnosis could not be used by the defendant for impeachment purposes. People v Schreiner (77 NY2d 733 [1991]) further extended the Hughes findings when it deemed the defendant’s hypnotically induced confession inadmissible.
In an attempt to diminish the known dangers associated with the process of hypnosis and to make it as reliable as possible, a New Jersey court established requirements with which a party must comply in order to offer hypnotically refreshed testimony into evidence. The New Jersey court held that hypnotically refreshed memory is not unreliable per se and may, in fact, be admissible if the hypnosis "is conducted properly and used only in appropriate cases”. (State v Hurd, 86 NJ 525, 538, 432 A2d 86, 92 [1981].)
Hurd (supra) went on to establish the following procedures which should be conducted, to wit:
1. A psychiatrist or psychologist experienced in the use of hypnosis must oversee the session;
2. The professional conducting the hypnotic session should be independent of and not regularly employed by the prosecutor, investigator, or defense;
3. Any information given to the hypnotist by law enforcement personnel or the defense prior to the hypnotic session must be recorded, either in writing or another suitable form;
4. Before inducing hypnosis, the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them;
5. All contacts between the hypnotist and the subject must be recorded;
6. Only the hypnotist and the subject should be present during any phase of the hypnotic session, including the prehypnotic testing and post-hypnotic interview.
The Hurd approach was specifically rejected in New York in Shreiner (supra) which stated that hypnosis still was not sufficiently reliable as a basis for the truth.
To date, New York courts have only examined hypnosis when it has been offered as direct evidence of the truth of the matter asserted. In determining the admissibility of hypnosis as direct evidence, hypnosis has been lumped into the same category of scientific procedures such as polygraph or voice stress tests which claim to establish the veracity of the subject’s statements.
*304 Historically, this jurisdiction as well as others has held these types of scientific procedures to be inadmissible as a result of their general unreliability. (See, e.g., People v Leone, 25 NY2d 511 [1969] [polygraph test results inadmissible]; People v Tarsia, 50 NY2d 1 [1980] [voice stress tests not reliable]; People v Adams, 53 Cal App 3d 109, 125 Cal Rptr 518 [1975] [statements induced by "truth serum” held inadmissible].)
It should be noted, in New York the Hughes/Frye test has always been applied in situations wherein the party offering the evidence is doing so for the purpose of introducing the actual results of the scientific method as direct independent evidence. (See, e.g., People v Mertz, 68 NY2d 136 [1986] [breathalyzer test results]; Matter of Abe A., 56 NY2d 288 [1982] [results of blood grouping test]; People v Castro, 144 Misc 2d 956 [1989] [results of DNA tests].)
Although the validity of hypnosis as a truth-finding technique has previously been explored, the issue in the present case is a novel one to this jurisdiction. Unlike the prior cases which have followed Hughes (supra), here the hypnotically induced memory is not sought to be introduced as direct evidence, but rather, is offered indirectly through a psychiatrist’s expert opinion.
Hence, in cases such as the one at bar, where the procedure is used merely as a diagnostic tool, I find the Hughes/Frye test should not apply.
This distinction has been drawn by a California court in People v Jones (42 Cal 2d 219, 266 P2d 38 [1954]), when it did not apply the Frye test and held that psychiatric opinion testimony could be based upon statements made while under the influence of sodium pentathol. The California court noted in its decision that the evidence proffered to the jury was not the answers given by the defendant, but rather, the expert’s analysis of those answers.
Additionally, it has been consistently held in this jurisdiction that an expert may base his opinion upon otherwise inadmissible evidence, if experts in that particular field reasonably rely upon such in forming their opinion. (See, e.g., Hambsch v New York City Tr. Auth., 63 NY2d 723 [1984]; People v Sugden, 35 NY2d 453 [1974]; People v Miller, 57 AD2d 668 [3d Dept 1977].)
In fact, in People v Wofford (59 AD2d 562 [1977]), six experts were allowed to testify as to a defendant’s culpability, basing *305 their opinions upon many different scientific procedures, including hypnosis. Although there was no direct objection to the admission of the evidence, the testimony was nevertheless permitted, despite the fact that the results of these scientific procedures would have been deemed inadmissible if offered as direct evidence. (See also, Proposed NY Code of Evidence § 703 [1991].)
Although hypnosis has only been examined as a legal issue in recent years, it has in fact been used as a diagnostic tool for over 200 years by the scientific community. During the late eighteenth century, it was used by physicians in their research as well as in their clinical practices. However, in the nineteenth century, hypnosis was then rejected by the scientific and medical communities, and its research and use were severely limited.
A renewed interest in hypnosis surfaced during the first World War when doctors specifically found it helpful for treating traumatic war neuroses. (Traynor, The Admissibility of Hypnotically Influenced Testimony, 55 Tenn L Rev 785 [1988].)
Both the British and American Medical Associations, during the mid-1950’s, formally recognized hypnosis as an acceptable medical therapeutic treatment. A recent random survey of the American Psychological Association showed that nearly half the members have been trained in hypnosis and more than one third have actually used hypnosis for treatment and diagnostic purposes in their clinical practices for more than one year. (Traynor, op. cit.)
I repeat at this juncture, the acceptance of hypnosis as a therapeutic and diagnostic tool was nonetheless recognized in a legal context by the Hughes Court in its 1983 decision.
Recognizing that hypnosis is now well established as a therapeutic and diagnostic tool, I accordingly find an expert may reasonably rely upon it to gather information, and may therefore refer to such information at trial whether or not the statements themselves would be admissible as evidence of the truth of the matter asserted.
Concurring with this premise, several courts of other jurisdictions have allowed, in their discretion, psychiatrists to testify to statements made to them by the subject who was under hypnosis. (See, e.g., People v Modesto, 59 Cal 2d 722, 31 Cal Rptr 225, 382 P2d 33 [1963]; People v Harris, 241 Ore 224, 405 P2d 492 [1965]; State v White, 60 Wash 2d 551, 374 P2d *306 942 [1962].) Federal Rules of Evidence rule 702 leaves the admissibility of scientific evidence within the discretion of the Federal trial court. (See also, Daubert v Merrell Dow Pharms., — US —, 113 S Ct 2786, 125 L Ed 2d 469 [1993].)
In New York, CPL 60.55 now provides that when offering the affirmative defense of lack of responsibility by reason of mental disease or defect, a psychiatrist may base his opinion on any statements made to him by the defendant and may specifically refer to such statements directly in such testimony (in this case, the defense is under the previous law and is not an affirmative defense).
Ordinarily, these statements would be considered hearsay, but an exception is made for this affirmative defense. Since the same reliability problems associated with hearsay testimony are present in hypnotically refreshed statements, as long as they are not used for the truth of the matter asserted and are used for the above-stated defense, they should fall within this section and be properly admitted.
Moreover, to avoid any danger of misuse, a limiting charge should be provided which instructs the jury to consider the statements solely for the purpose of evaluating the basis of the psychiatrist’s opinion and not as direct evidence of the matter asserted. In addition, to lessen the dangers associated with the process of hypnosis, and to ensure a minimum level of reliability, the guidelines set forth in State v Hurd (supra) should be adhered to.
While hypnosis may not be introduced as direct evidence of the truth of the matter asserted, a testifying psychiatrist may, nevertheless, rely on hypnosis for the purpose of assessing the subject’s state of mind.
Accordingly, the psychiatrist may testify to statements made to him by Mr. Santana while under hypnosis to the extent that such statements apply to the defendant’s mental state at the time in issue.